IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

vs.

Michael Christian

Case No. 1:20-cr-00019-DKC-1

\*\*\*\*\*\*

**MEMORANDUM AND ORDER**

     The Court has reviewed Defendant's Emergency Motion for Reconsideration of Detention. (ECF No. 18). The Court has also reviewed the Government's Opposition. (ECF No. 19). The Court finds that no hearing is necessary. For the reasons set forth more fully below, Defendant's Motion is DENIED.

     This Court held a detention hearing on January 23, 2020. During that hearing, the Court heard argument and proffers from both sides regarding the factors set forth in Section 3142(g) of the Bail Reform Act, 18 USC 3142, which are the criteria that Congress has determined must guide detention or release decisions by this Court. In finding that there was probable cause to establish that Defendant committed the offense charged (supported by his post-*Miranda* acknowledgment that the loaded gun found next to him in his vehicle was, in fact his (ECF No. 19 at 6)), the Court also found by clear and convincing evidence that Defendant posed a danger to the community, and that there were no conditions or combination of conditions that could reasonably assure community safety. (ECF No. 11). In particular, the Court noted Defendant's criminal history that included a prior handgun charge and drug distribution charge, along with his poor performance on prior community supervision (including committing his two felony convictions while released on supervision). *Id*. The Court also emphasized the nature and circumstances of the offense, which included possession of a loaded firearm and controlled dangerous substances in Defendants vehicle, confirmed both by body camera footage of Defendant's arrest and, as noted, his post-*Miranda* acknowledgment that the loaded firearm was his. *Id*. The Court acknowledged that Pretrial Services—who is tasked with supervising defendants on conditional release—recommended against the release of Defendant.[1] *Id*. Finally, as Defendant had proposed 24/7 electronic location monitoring in the residence of a third party custodian, Defendant's girlfriend and the mother of his children, the Court noted that the proposed third party custodian had employment demands that kept her away from the residence for extended periods of time as an additional factor in its decision. *Id*.

---

[1] Note that Defendant's underlying charge of a violation of 18 U.S.C. 922(g)—possession of a firearm by a previously convicted felon—does not carry a presumption of detention pursuant to the Bail Reform Act unlike a charge under 18 U.S.C. 924(c)--the possession of a firearm in furtherance of a drug trafficking crime. Notwithstanding Defendant's possession of a controlled substance at the time he was found in possession of a handgun, his current charge is under 922(g) only. To the extent the Court's completion of its original Order of Detention implies otherwise, the presumption of detention is not operative in this case.

Defendant raises two issues in his argument pursuant to 3142(f)(2)(B) that there is information not known at the time of his hearing that would have a material bearing on the issue of whether there are release conditions available that would reasonably assure the safety of any other person and the community. Such information must also, of course, specifically relate back to the 3142(g) factors that formed the basis of the Court's previous detention decision.

First, Defendant advises that the proposed third party custodian is no longer is employed such that she would be available to assist Pretrial Services and the Court is making sure Defendant stayed compliant with any conditions of release The Court notes that while this was a consideration in its detention decision, it was far from the only one. As importantly, due to health and safety recommendations, the Court no longer has available the option of 24/7 electronic home monitoring as a tool to help ensure community safety. Although the Court can order home confinement, there are only lesser mechanisms that only allow for periodic, as opposed to continuous, monitoring. Given Defendant's prior poor performance on community supervision, the absence of that tool is significant.

Second, Defendant argues that in light of his underlying asthma, he is at higher risk for complications should he contract the COVID-19 virus during his detention. Specifically, Defendant states:

> It has been made clear that the DC jail where [Defendant] is housed is ill-equipped to handle his medical concerns appropriately. There is grave concern that, based on the crowded and poor conditions at this facility, his health concerns put him at a greater risk than the majority of the jail population, and his health will continue to deteriorate.

(ECF No. 18 at ¶ 5). Where, as here, a defendant has particular underlying health conditions recognized by health authorities to increase his or her risk for complications should COVID-19 infection occur, this Court has recognized that this unanticipated health event could have a material bearing on whether detention remains appropriate, and thus requires the Court to balance this with the other factors under 3142(g) to do an individualized assessment. *See United States v. Martin*, 2020 WL 1274857 (D. Md. 2020).

The Court has set forth its initial analysis of the 3142(g) factors above, all of which support detention. Defendant does not reargue those factors, with the exception of the availability of the proposed third-party custodian, a change that, as noted above, is notably offset by the current unavailability of being able to establish 24/7 electronic monitoring. Thus, it does not change the Court's prior analysis.

As for COVID-19, this pandemic raises significant health concerns and challenges in virtually every corner of the globe and risks the health of every member of the community. This, of course, includes those members in custodial settings such as nursing homes, hospitals, and detention facilities where the ability to maintain recommended social distancing can be severely compromised. That does not mean, however, that other appropriate measures regarding cleaning, handwashing, identification, quarantining, and treatment are absent from these facilities. In fact, the Government's Opposition goes into great detail about the particular

measures put in place at the Correctional Treatment Facility ("CTF") where Defendant is detained that directly contradict Defendant's assertion that CTF is "ill-equipped to handle his medical concerns appropriately." (ECF No. 18 at 10-15). Defendant does not claim that he has been exposed to or contracted COVID-19. Although his underlying asthma may put him at increased risk *should* he contract the virus, it does not increase his risk of contracting the virus. Should Defendant ultimately test positive or become symptomatic, he has put forth no evidence to counter the Government's description of the procedures in place at CTF to identify, quarantine, and, if necessary, provide treatment to detainees.

Further, even outside such facilities, the risks of COVID-19 are considerable in that there is consensus that asymptomatic carriers can pass on infection yet there is not yet widespread implementation of a system to identify such carriers. Further, only limited testing (with extended times for receiving results) is available at this time, usually reserved for symptomatic patients (who themselves were in a position to pass on the virus before becoming symptomatic). This impairs the ability to track the spread of the disease and impose appropriate quarantine measures. There is conflicting information about how long one remains contagious, and how long the virus survives in various environments and on different surfaces. Access to medical care is also variable depending both on facilities being appropriately resourced and not overwhelmed, and on the ability to surmount the historic barriers to care that are particularly exacerbated in a crisis such as this.

Ultimately, the impact of COVID-19 on a prior detention decision under the Bail Reform Act is judged on whether it alters the Court's risk analysis regarding the safety of the community. Defendant is a member of the community now detained. His continued presence in his community was deemed by clear and convincing evidence to create an unreasonable risk by this Court to his fellow community members, based on the factors Congress has set forth. The presence of the virus both inside and outside CTF does not change Defendant's criminal history of handgun and drug distribution convictions, nor his inability to comply with release conditions imposed by prior judges facing this assessment. It does not change the nature of the current gun charge, supported by strong evidence, in a city that had more than 1000 shootings (nearly 350 of them fatal) last year. Nor has Defendant demonstrated that, at present, his particular risk in detention is markedly different from his risk in the community so as to outweigh all of the other 3142(g) factors, putting aside any health risk that Defendant himself might introduce to the community should be released if, as before, he were to be noncompliant with release conditions and the directives of public officials and health agencies.

Accordingly, Defendant's Motion is **DENIED**.

| | |
|---|---|
| 4/6/2020 | /s/ |
| Date | J. Mark Coulson |
| | United States Magistrate Judge |